LOOSE-WILES BISCUIT COMPANY

*vs.*

DEERING VILLAGE CORPORATION.

Cumberland.   Opinion, July 22, 1946.

*Jacob H. Berman,*

*Edward J. Berman,*

*Sidney W. Wernick,* for the plaintiff.

*Wilfred A. Hay,*

*Verrill, Dana, Walker, Philbrick & Whitehouse,* for ·the de-
fendant.

Sitting: Sturgis, C. J., Thaxter, Murchie, Tompkins, Fellows, JJ.

Murchie, J.   This case is brought forward on appeal by the defendant from the decree of a single justice sitting in equity. In the process the plaintiff, as lessee of defendant's immediate predecessors in title to a parcel of land and the buildings thereon, seeks to enjoin the defendant from removing a spur track or siding which serves said parcel, and is the subject matter of an express provision in plaintiff's lease, although it is located on an adjoining lot, never owned by the lessors, which the defendant acquired after securing the title to the reversion in the leased property by a deed conveying that title subject to the lease. The issues raised can be brought into focus most effectively by a chronological recital of the pertinent title history of the separate lots.

On and prior to April 15, 1943, when the lease was executed, the leased parcel was owned by five individuals. It had been serviced since January 1, 1926, by the spur track aforesaid. The preferential use of that spur track was assured to the plaintiff under two agreements between the lessors and Portland Terminal Company, the owner of the parcel on which it was located and the operator of the railroad rendering service over it. These were a Sidetrack Maintenance and Operation Agreement dated January 1, 1942, setting forth the terms and conditions regulating the maintenance and use of the track, and a Consent Agreement dated June 5, 1942, making it available to the tenants of the lessors. The defendant took title to the demised premises, and other property, under a deed dated November 18, 1943, which carries recital at the close of the *premises,* or descriptive part, and immediately preceding the *habendum,* that:

"Said premises are subject to two leases, one to the Loose-Wiles Biscuit Company . . . ."

Appropriate language in the *convenants* excepts the leases from

the operation of full covenants of warranty. There can be no doubt that the title of the defendant to the leased property is held subject to the plaintiff's right to occupy the premises until April 30, 1948, and thereafter until April 30, 1953, upon exercise of an option of renewal.

The parcel on which the spur track is located is referred to in the lease as "immediately adjacent" to the premises therein demised. It was owned by Portland Terminal Company prior to April 15, 1943, on that date, and thereafter until it was purchased by the defendant. Title to it, as part of a larger lot, passed in a deed runnning to the defendant which bears date of May 23, 1944, but was not recorded until November 2, 1944. In the interval prior to May 23, 1944, the defendant had acquired title to the demised premises and executed agreements with Portland Terminal Company similar to the Sidetrack Maintenance and Operation Agreement of January 1, 1942, and the Consent Agreement of June 5, 1942. On the day of the execution of these agreements the defendant was the owner of the leased property, subject to the lease, but had no manner of interest in or connection with the title to the spur-track parcel.

Plaintiff asserts its claim on the basis of three paragraphs in the lease which set forth respectively a covenant of quiet enjoyment, an undertaking by the lessors in connection with the maintenance of the spur track which contains a condition giving the lessee the right of termination on the happening of a named event, and a recital that the provisions of the lease should bind, and inure to, the assigns of the parties. In their pertinent parts, these read:

"The Lessors covenant and agree that the Lessee . . . shall and may peaceably and quietly . . . enjoy the demised premises . . . ."

"It is agreed and shall be made a condition of this lease that a spur switch track . . . shall be maintained by the Lessors for the use of the Lessee, and should said . . . spur

be removed, or the use thereof interfered with . . . the said Lessee shall have the right and privilege of terminating this lease."

"It is covenanted and agreed . . . that the covenants . . . shall be binding upon and apply and inure to the . . . assigns of the respective parties."

A memorandum, filed prior to the entry of the decree, recites findings that:

". . . it was the intention . . . that the lessors should be obligated to furnish . . . the spur track so far as it was and should be under their control."

"It was not in accordance with the intention . . . that the lessors . . . should be relieved of the obligation by acquiring the interest of the Portland Terminal Company."

"the use of the spur track was an essential requirement to the plaintiff as lessee"

and

"if denied such use the lessee would be without adequate remedy by action at law."

If these recitals constituted factual findings they would be entitled to the benefit of the principle declared in *Young* v. *Witham*, 75 Me., 536, ever since maintained, that they should not be disturbed on appeal unless clearly erroneous. Actually they are findings, or rulings, of law, as the language used discloses. The first two find intention and while the law is clear that contracts should be construed in a manner which will effectuate the intention of the parties, *Erskine* v. *Moulton*, 66 Me., 276; *Ames* v. *Hilton*, 70 Me., 36; *Bell* v. *Jordan et al.*, 102 Me., 67, 65 A., 759, it is recognized that the interpretation of written contracts is a question of law. *Guptil* v. *Damon*, 42 Me., 271; *Hoyt* v. *Tapley*, 121 Me., 239, 116 A., 559. The essentiality of the spur track

has no bearing on the case unless the lessors contracted to furnish it as part of the leased property. Whether a litigant seeking equitable relief has an adequate remedy at law is a question of law.

The decree sustains the plaintiff's bill and permanently enjoins the defendant, its agents and servants (in accordance with the prayer of the process), from removing the spur track or interfering with the plaintiff's use of it during the term of the lease, or renewal. The injunction is potentially effective through April 30, 1953. It prohibits the defendant from utilizing its title on the basis of a negative intention, and from conveying that free title which it acquired from its predecessor in title. Counsel for the plaintiff conceded at oral argument that the owner of the property when the lease was executed, or any grantee other than the defendant (or one holding title to the leased premises), would have the right to remove the spur track. The effect of the injunction therefore is to hold that the merging of title to the lot on which the spur track is located and the leased property in a single owner subjected the former to a servitude in favor of the latter.

Defendant's appeal presents the issue as to whether the injunctive relief sought and obtained is available to the plaintiff, assuming the breach of contract alleged and that damages cannot be compensated by a money verdict, and additional ones, perhaps more fundamental, whether the lease contains a contract which bound defendant's immediate predecessors in title in the manner asserted, regardless of the will of the owner of the land on which the track is located, and whether the defendant is so bound by reason of its acquisition of title to the separate parcels.

We deal with the question of remedy first because the situation is unique and we feel, as was stated in *Myers* v. *Gemmel*, 10 Barb., 537 (New York Supreme Court), that:

> "A rule . . . blindly fettering estates without any written evidence of right . . . should not be adopted . . . unless it is clearly the law."

In the New York case, *supra* (10 Barb., 537), as in three English cases to which the defendant cites us, *Booth* v. *Alcock*, L. R., 8 Ch., 663 (1873 B., 72); *Leech* v. *Schweder*, L. R., 9 Ch., 463 (1873 L., 100); and *Davis* v. *Town Properties Investment Corporation, Limited*, L. R. 1903, 1 Ch., 797; injunctions originally granted were dissolved on the ground that a lessee acquired no rights in one parcel of land by leasing an adjacent one. In the English cases the rights were sought to be asserted under a covenant of quiet enjoyment and the plaintiff herein alleges such a covenant as one ground for relief. Declarations with reference to covenants of quiet enjoyment in the *Leech* case, supra (L. R., 9 Ch., 463), that it:

"does not increase or enlarge the rights . . . granted by the previous part of the conveyance"

and in the *Davis* case, supra (L. R. 1903, 1 Ch., 797), that it does not enlarge the obligation of the lessor with reference to any rights other than:

"those incident to the demised premises such as they were at the time of the demise"

indicate clearly that in England a covenant for quiet enjoyment is not construed as reaching property lying outside the demised premises and is interpreted with reference to such premises as they existed when the lease was executed. These decisions have particular force because of the common law principle of English law relative to prescriptive rights in light and air. That principle controlled the decision in *Story* v. *Odin*, 12 Mass. 157, 7 Am. Dec., 46, but that case was never followed and was overruled in effect by *Keats* v. *Hugo*, 115 Mass. 204, 15 Am. Rep., 80. An annotation in 7 Am. Dec. (49), reviews numerous cases dealing with the subject matter. The New York Court, in *Myers* v. *Gemmel*, supra (10 Barb., 537), expressly declared that the English common law on the point was not applicable under the changed conditions prevailing in this country. What the plain-

tiff seeks here would require us to go further than the English common law and no precedent has been presented which would justify us in going so far. The Massachusetts Court, in *Royce* v. *Guggenheim*, 106 Mass., 201, 8 Am. Rep., 322, drew a distinction between the acts of a landlord or lessor performed in good faith for the purpose of improving his estate and those designed to injure a tenant. It is expressly stipulated here that the action of the defendant enjoined was intended to serve a proper purpose and was contemplated in entire good faith.

The plaintiff relies on an alleged agreement to maintain the spur track as well as on the covenant of quiet enjoyment. In argument counsel for the plaintiff supports his contention in this regard by reference to certain dictionary definitions of the word "maintained" and by citations to particular paragraphs in the Restatement of Contracts and Williston & Thompson on Contracts. These will be referred to in considering the contract issue but we note in connection with the remedy sought that the premises demised are a

"One-story building on property at 167-169 Forest Ave. Portland, Maine"

and that the spur track is located without the limits of it. It is property adjacent to the demised premises to which the injunction relates. The lease when executed could not have imposed a servitude upon it because the lessors held no shadow of claim to its title but merely a right of use during the pleasure of the owner. It could not have operated in that manner when defendant acquired the reversion because said defendant had no title to it at that time. The only possibility is that the servitude attached when the defendant, as owner of the reversion, took title. The facts are not such, however, as bring into operation the principle of law, well established in this State, that a grantee of one who has warranted a title he did not possess takes the title warranted if his grantor subsequently acquires it. *Pike* v. *Galvin*, 29 Me., 183; *Powers* v. *Patten*, 71 Me., 583; *Lapitre* v. *Breton*, 134

Me., 300, 186 A., 706. That principle is grounded in an estoppel which prohibits one bound by a covenant of title, or those claiming under him, from asserting an adverse one subsequently ac-'quired by the warrantor. 19 Am. Jur., 610, Par. 12. In *Fairbanks et al.* v. *Williamson*, 7 Me., 96, such an estoppel was declared to result from a limited covenant but that case was expressly overruled in the *Pike* case, supra (29 Me., 183), where in discussing covenants running with the land the fundamentals applicable thereto were stated in the words:

> "But a covenant, which may run with the land, can do so only when the land is conveyed. It can only run, when attached to the land, as its vehicle of conveyance."

The language of the lease shows clearly that no covenant of title was intended. The spur track is said to be located on land not owned by the lessors. Mr. Justice Wells dissented from the opinion in the *Pike* case, supra (29 Me., 183), but his dissent does not challenge the general principles stated in the quoted excerpt. See the dissenting opinion in 30 Me., 539 and also *Bennett* v. *Davis*, 90 Me., 457, 38 A., 372. Without reference to the issue of defendant's contractual liability it must be held that the land on which the spur track is located was not impressed with a servitude by defendant's acquisition of the title to it after becoming the owner of the reversion following the leasehold estate. The appeal must be sustained and the injunction dissolved.

On the record the plaintiff's allegation that a remedy at law would not be adequate, assuming that the lease imposed a definite obligation on the lessors to maintain the spur track during the term of the lease, and defendant's liability thereon, is not supported. The direct testimony of its principal witness is that the leased premises could not be used for its business there conducted without a siding at the door for discharging incoming freight but the cross-examination discloses that the explanation lies in anticipated prohibitive cost. Later suggestion, against the intimation that a convenient siding rather than one at the

door might service the plant, was that the goods handled were subject to breakage on long highway hauls. In support of this suggestion the witness offered the experience of substantial damage done in transporting a few loads from Boston in a trailer truck. No effort was made to show that receipt of incoming freight at a convenient siding was unworkable except by reference to increased cost. Such impossibility as results from that is compensable in money damages. Factually the case shows that defendant offered plaintiff a new siding at the door of the plant and more building space at an increased rental. Under such an arrangement the money measure of a breach of contract, if one was involved, could be established with exactitude.

The question of remedy is unimportant unless the contract is construed as imposing a liability on the lessors and their assigns to furnish the spur track to the lessee during the leasehold term. On that issue the plaintiff bases its claim in part on the word "maintained" and the principle of law that in the construction of contracts words are to be given their plain, ordinary and generally accepted meaning. This principle is well established. *Hawes et al.* v. *Smith*, 12 Me., 429; *E. A. Strout Co.* v. *Gay*, 105 Me., 108, 72 A., 881, 24 L.R.A. N.S., 562. Relying on it the plaintiff refers us to certain definitions given in Webster's New International Dictionary. These are:

"to hold or keep in . . . a state of efficiency; to keep up; not to suffer to fail or decline."

Additional meanings, found in Webster's Universities Dictionary, are:

"To continue; not to suffer to cease;"

and:

"to support the expense of."

In so far as intention is to be determined by the use of the word "maintained' 'it is clear that one of the plain, ordinary and gen-

erally accepted meanings of it will sustain the position of either party. In such cases its intended meaning is to be determined by the context of the entire agreement. *Amey et al.* v. *Augusta Lumber Co.*, 128 Me., 472, 148 A., 687.

To give the word "maintained" the meaning which reflects the intention of the parties to the contract we must go back to the day of its execution and consider the position of those parties with reference to the properties involved. It is in that manner that contracts should be construed. *Sewall et al.* v. *Wilkins*, 14 Me., 168; *Bucksport & Bangor Railroad Co.* v. *Inhabitants of Brewer*, 67 Me., 295. The intention is to be garnered by giving consideration to the contract as a whole, without undue weight for a particular part. *Erskine* v. *Moulton*, supra (66 Me., 276); *Ames* v. *Hilton*, supra (70 Me., 36); *Bell* v. *Jordan et al.*, 102 Me., 67, 65 A., 759; *Skowhegan Water Co.* v. *Skowhegan Village Corporation*, 102 Me., 323, 66 A., 714. Neither party had any shadow of title to the spur track parcel. The lessors owned the demised premises. The lessee occupied them. The lessors had an agreement or agreements making the track available for use in connection with the leased property by the railroad rendering the service. That the railroad was the owner is unimportant. Nothing in the side track agreements encumbered the title. Nothing in the lease suggests that they did. The particular paragraph imposed an obligation on the lessors to support the expense of maintaining the spur track so long, during the term of the lease, as the owner of the land on which it was located should permit its use for the purpose contemplated. The parties did not give the spur track that degree of essentiality conferred upon it in the findings. Their agreement was that if it should be removed, or its use interfered with, the lessee should have the right to terminate the lease.

The plaintiff cites us to the Restatement of Contracts and to Williston & Thompson on Contracts and quotes excerpts from these authorities which it is claimed assert the principle that whenever it is doubtful whether particular words of a contract

create a promise or a condition they should be interpreted as carrying a promise, Restatement, Vol. 1, Pages 375-376, Sec. 261; and that the recital of both promise and condition is designed to secure the fullest protection, Williston & Thompson, Vol. 3, Page 1909, Sec. 664. The quoted paragraph from the Restatement is followed by comment indicating that the section itself "involves merely a question of interpretation" and referring to other text material, both preceding and to follow, which supports the general principle already stated. Declaring a written document to be the integration of a contract, this authority declares that the meaning is that which would be attached to it by:

> "a reasonably intelligent person acquainted with all the circumstances prior to and contemporaneous with the making of the integration."

If consideration is given to the situation of the parties at the time the contract was integrated, and particularly to their situation with reference to the separate properties with which their contract dealt, it is apparent that there could have been no binding obligation intended to be assumed by the lessors, or which the lessee should have believed the lessors were undertaking, to commit the spur track parcel to the purposes of the lease. As to this defendant the issue is once removed. Under the contract between plaintiff's lessors and the defendant, by which the defendant secured the title to the reversion, the latter undertook no obligation for the benefit of the plaintiff. The defendant, it is true, accepted the title subject to the plaintiff's lease but it would be stretching the principle which gives third party beneficiaries the benefits of contracts to which they are not parties beyond anything heretofore known to hold that by the mere acceptance of a title encumbered by a lease a grantee bound himself to do something with property lying outside the leased premises which neither his grantor nor any other predecessor in title was obligated to do.

So far as the spur track is concerned the contract contained in

the lease gave the plaintiff as lessee that right it clearly expresses and no more, i.e., the right to terminate the lease at its election if the spur track was removed, or its use interfered with, and if the property proved unsatisfactory for its purposes without the use of that facility.

The case must be remanded for the entry of a decree dismissing the plaintiff's bill.

*Appeal sustained. Case remanded for the entry of a decree dismissing the bill.*