THOMAS F. EDMANDS & another, trustees, *vs.* RUST AND RICHARDSON DRUG COMPANY.

Suffolk.   January 15, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Landlord and Tenant.   Covenant.*

A lease contained a provision for an entry by the lessors to terminate the lease for a breach of covenant, and the lessee covenanted in case of such entry "to be responsible for any loss or diminution of rent sustained by the lessors in consequence till the end of the lease." There was a breach of covenant by the lessee and the lessors entered and took possession. In an action on the covenant above quoted for loss of rent, it appeared that the plaintiffs upon regaining possession of the premises managed the property in good faith according to their best judgment for the interest of the defendant as well as their own and did everything that it was their duty to do to prevent unnecessary loss or diminution of rent in consequence of the termination of the lease. *Held,* that the plaintiffs were entitled to recover the difference between the rent reserved in the lease and the amount actually received by them.

In an action on a covenant in a lease on the part of the lessee to be responsible until the end of the term for any loss or diminution of rent sustained by the

lessor in consequence of an entry by the lessor for breach of covenant, a request by the defendant for an instruction, that if the jury should find that the plaintiff made an entry for the purpose of terminating the lease the defendant would not be liable as a tenant after that time, properly may be refused as immaterial, the plaintiff seeking indemnity for loss of rent and no rent being sued for.

In an action on a covenant in a lease on the part of the lessee to be responsible until the end of the term for any loss or diminution of rent sustained by the lessor in consequence of an entry by the lessor for breach of covenant, the presiding judge refused a request of the defendant to instruct the jury, on the question of the financial responsibility of tenants not accepted by the plaintiff after retaking possession of the premises, that if the jury found that a prospective tenant was satisfactory financially to the defendant that was enough and would preclude the plaintiff from objecting to the tenant on that ground, and, instead, instructed the jury that the plaintiff's effort to obtain tenants must have been that which a reasonable landowner would make under the circumstances, that not every tenant proposed need be accepted, but that an unreasonable refusal to accept a suitable tenant would be deemed an abandonment of the election to relet at the risk of the lessee. *Held,* that the refusal of the judge to give the instruction requested by the defendant was right, as the plaintiff was not bound by the defendant's decision that a prospective tenant was satisfactory financially, and if acting in good faith and with sound discretion the plaintiff decided that a proposed tenant was not good financially he was not bound to accept him merely because the defendant was satisfied with him.

CONTRACT by the trustees under the will of John Rayner, owners of the building numbered 43 and 45 on Hanover Street in Boston, against the Rust and Richardson Drug Company, a corporation, for a balance alleged to be due under a covenant in a lease by which the defendant agreed to be responsible until the end of the term for any loss or diminution of rent sustained by the plaintiffs in consequence of a termination of the lease by the plaintiffs by an entry for a breach of covenant. Writ dated January 2, 1903.

At the trial in the Superior Court before *White,* J. it appeared that the lease was terminated by an entry for a breach of covenant and that possession was regained by the plaintiffs in the manner stated in the opinion.

The first, fourth, seventeenth and eighteenth rulings requested by the defendant and refused by the judge, which are mentioned but not quoted in the opinion, were as follows:

" 1.  That on all the evidence the plaintiff is not entitled to recover."

" 4.  If the jury find that the plaintiffs made an entry on the premises on April 6, 1901, for the purpose of terminating the lease under which the defendant was then occupying said prem-

ises, such an entry would terminate the tenancy of the defendant and for anything happening thereafter the defendant if liable in this action at all, is not liable on the ground of being a tenant."

"17. After the entry of April 6, 1901, the plaintiffs, if they seek to recover in this action, were bound, for the remaining time covered by defendant's responsibility for deficiency in rentals, to accept any proper tenant. Their right to refuse tenants was very much less than if they were not seeking to charge the defendant in this action, and could be exercised only for good and sufficient reasons. Any proper tenant they were bound to accept. And for moneys lost during that time by refusals of proper tenants the plaintiffs have no right of action against the defendant. In determining what is a proper tenant the jury will take into consideration the character and location of the premises in question, the character and location of the neighborhood, the uses to which premises in that neighborhood were being put and all other similar circumstances. And on the question of financial responsibility, if the jury find that a prospective tenant was satisfactory financially to the defendant, that is enough, and will preclude the plaintiffs from objecting on that ground. If the jury find that the defendant offered, or the plaintiffs knew of, a tenant or tenants who, tested by the above rules, should have been accepted by the plaintiffs, but was not, then the plaintiffs cannot recover of the defendant any moneys to which, during the balance of the defendant's term, they would have been entitled had such tenant been accepted.

"18. After the entry of April 6, 1901, the plaintiffs, if they seek to recover in this action, were bound, for the remaining time covered by the defendant's responsibility for deficiency in rentals, to accept any proper tenant. Their right to refuse tenants was very much less than if they were not seeking to charge the defendant in this action, and could be exercised only for good and sufficient reasons. Any proper tenant they were bound to accept. And for moneys lost during that time by refusals of proper tenants the plaintiffs have no right of action against the defendant. In determining what is a proper tenant the jury will take into consideration the character and location of the premises in question, the character and location of the neighborhood, the uses to which premises in that neighborhood

were being put and all other similar circumstances. And on the question of financial responsibility, if the jury find that a prospective tenant was satisfactory financially to the defendant, that is enough, and will preclude the plaintiffs from objecting on that ground. If the jury find that the defendant offered, or the plaintiffs knew of, a tenant or tenants who, tested by the above rules, should have been accepted by the plaintiffs, but was not, then the plaintiffs cannot recover of the defendant in this action."

The judge refused to give the first ruling and declined to give the fourth, seventeenth and eighteenth rulings in the form requested, except so far as given or covered by the charge to the jury. The fourth ruling requested was given by the judge with the modification quoted in the opinion. The general purport of the judge's charge upon the subject of the seventeenth and eighteenth rulings requested is stated in the sentence quoted in the last paragraph of the opinion.

The jury found for the plaintiffs in the sum of $2,057.92, which was the difference between the rent reserved under the lease and the amount actually received by the plaintiffs, with interest; and the defendant alleged exceptions.

*W. O. Underwood,* for the defendant.

*H. E. Bolles & B. D. Barker,* for the plaintiffs.

KNOWLTON, C. J. The plaintiffs made a lease to the defendant, containing a provision for an entry by the lessors to terminate the lease for a breach of the covenants, followed by this language: " but the lessee covenants to be responsible for any loss or diminution of rent sustained by the lessors in consequence till the end of the lease." The defendant having underlet a portion of the premises without the consent in writing of the landlord, in violation of a provision in the lease, the plaintiffs, on April 6, 1901, made an entry and terminated the lease in accordance with its provisions. The premises were then held by the tenants to whom the defendant underlet, and there being some question whether the plaintiffs were in possession as against the defendant, a process of forcible entry and detainer was brought by the plaintiffs against the defendant, and an execution was issued on June 7, 1901, under which the plaintiffs were put in possession on July 2, 1901, after which time the

plaintiffs maintained possession. They received rent from different tenants to the end of the term, and then brought this action, upon the covenant quoted above, to recover for loss or diminution of rent sustained in consequence of the failure of the defendant to perform its covenants. The case comes before us on the defendant's exceptions to the refusal of the judge to give the first, fourth, seventeenth and eighteenth rulings requested, in the form in which they were asked for, and to the rulings given upon the subjects referred to in these requests.

1. There was ample evidence to entitle the plaintiffs to recover. The evidence tended to show that the plaintiffs, upon regaining possession, managed the property in good faith, according to their best judgment, for the interest of the defendant as well as for their own, and that they did everything that it was their duty to do to prevent unnecessary loss or diminution of rent in consequence of the termination of the lease. The language of this covenant is quite different from that of the covenant referred to in *Weeks* v. *International Trust Co.* 125 Fed. Rep. 370, and *Bowditch* v. *Raymond,* 146 Mass. 109, and it is also different from the language in the lease before the court in *Woodbury* v. *Sparrell Print,* 187 Mass. 426. It may well be that its requirements of the lessors are less strict in some particulars than those stated in the first of the above cases, but even if they are precisely the same, the first request for a ruling was rightly refused.

2. The fourth ruling requested was given with a modification made by inserting the words " which entry was recognized by the defendant." The judge left to the jury the question whether the defendant afterwards continued to hold as a tenant under the lease, not recognizing the entry as an acquisition of possession by the plaintiffs. If it did, it might be liable for rent if the plaintiffs elected to hold it as a tenant. The entire request was immaterial, because there was no claim, in the declaration or otherwise, at the trial, for rent as rent after April 6; but the only claim was under the covenant to indemnify against loss or diminution of rent.

3. The seventeenth and eighteenth requests were rightly refused, and the instructions given upon the subjects to which they relate were sufficient. On the question of financial respon-

sibility the plaintiffs were not bound by the determination of the defendant that a prospective tenant was satisfactory financially. They were interested for themselves, as well as for the defendant, and if a prospective tenant was not financially good, and they knew it, or if, acting in good faith and with sound discretion, they decided that he was not financially good, they were not bound to accept him and take the risk of loss, merely because the defendant, who was in the position of a guarantor, was satisfied with him. · The defendant might also prove financially bad, and the plaintiffs were not obliged to rely altogether upon its covenant of guaranty, or its judgment as to tenants.

The instructions to the jury on the points covered by these requests were sufficiently favorable to the defendant. The contention of the plaintiffs in regard to their conduct was stated, and the jury were told that, if they found this contention to be in accordance with the fact, the plaintiffs might recover the amount of their claim. One of the judge's statements was as follows: " In general the effort must be that which a reasonable landowner would make under the circumstances. Not every proposed tenant need be accepted, but an unreasonable refusal to accept a suitable tenant will be deemed an abandonment of the election to relet at the risk of the lessee." The contention of the defendant was stated fully, and the jury were left to decide between the parties, in a way of which the defendant has no reason to complain.

*Exceptions overruled.*