Argued January 15, affirmed April 26, 1973

FOGGIA, *Respondent, v.* DIX, *Appellant.*

509 P2d 412

*David P. Miller,* Portland, argued the cause for appellant. With him on the briefs were Charles F. Hinkle and Davies, Biggs, Strayer, Stoel & Boley, Portland.

*Walter H. Grebe,* Portland, argued the cause for respondent. With him on the brief were Morrison, Bailey, Dunn, Cohen & Miller, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN and BRYSON, Justices.

O'CONNELL, C.J.

This is an action brought by plaintiff lessor for damages resulting from defendant lessee's breach of a lease. Both parties waived a jury trial. Judgment

was entered for plaintiff in the amount of $3,375 plus costs and attorney's fees in the amount of $750. Defendant appeals.

Plaintiff, a physician, owns a medical-dental clinic building in Lake Grove, Oregon. The defendant, a dentist, signed the lease involved in the present action on or about June of 1969, which was about six months before construction of the clinic building was completed. The lease provided for a rent of $375 per month and was to extend for a period of five years after defendant commenced occupation of his offices. Defendant moved in on December 15, 1969. Various disagreements arose between plaintiff and defendant, and after giving thirty days notice, defendant vacated the premises on May 1, 1971. The offices formerly occupied by defendant were still vacant at the time of trial, and plaintiff brought this action to recover as damages the rent due under the lease for the months of June, 1971 through January, 1972.

■ Defendant first contends that there was no consideration for the lease in question because a lease relating to the same premises had been executed in 1968, calling for a rent of $250 per month. However, the evidence showed that subsequent to the execution of the 1968 lease the building plans for the clinic were altered and refined in order to accommodate one additional dentist. The alterations substituted for a common reception area in the original plans a separate reception area for each doctor. There were other changes made as a result of the new plans. All of the alterations were made only after defendant and the other lessees had been consulted by plaintiff's architect. On the basis of this evidence the trial court found that "[d]efendant signed the lease sued upon with

plaintiff in consideration of plaintiff's agreement to build the building in accordance with the plans and specifications as then and there established. Whether or not a prior lease existed between the parties was of no relevance to this question."

Defendant contends that this finding is in error on the ground that "since plaintiff was already obligated to lease the premises to defendant at a monthly rental of $250, defendant's promise to pay $375 under the second lease was without consideration and void, for the second lease bound plaintiff to do nothing more than he was already bound to do." The answer to this contention is that there was consideration for the subsequent lease arising from plaintiff's expenditure of additional money for alterations, all of which was done pursuant to an agreement with defendant.

Defendant next contends that plaintiff did not make a reasonable effort to mitigate damages, a duty imposed upon the lessor by our previous decisions.[1]

Plaintiff testified that he talked to every dentist in Lake Oswego, informing them of the availability of the premises for a dental office. He also talked to

---

[1] Davis v. Wilson, 261 Or 137, 493 P2d 31 (1972); Kulm v. Coast-to-Coast Stores, 248 Or 436, 432 P2d 1006 (1967); Wright v. Baumann, 239 Or 410, 389 P2d 119, 21 ALR3d 527 (1965). In Kulm v. Coast-to-Coast Stores, *supra* at 442, we said:

"* * * In ordinary circumstances property which is the subject matter of a contract to execute or renew a lease can be leased to others upon the promissor's failure to accept the lease. Under such circumstances it is reasonable to assume, in the absence of proof to the contrary, that the lessor's loss is not the full amount of the stipulated rent but an amount which represents the difference between the stipulated rent and the rent which plaintiff would receive upon leasing the premises to others. If the plaintiff can show that there is no market for the leasehold, he can, of course, recover the entire amount of the rent reserved, but it is his burden to show this and if he does not, he has not made out his case."

oral surgeons and veterinarians in the area about leasing the space. He informed the University of Oregon Medical School and Dental School, and posted notices on the bulletin board of the University of Oregon Dental School. He advertised in the Oswego Review, a weekly newspaper, which he described as being "widely read by everybody in Oswego." He notified the Oswego Chamber of Commerce of the vacancy. He placed a "for rent" sign on the window in the clinic (although there was evidence that it was not visible from the street). Plaintiff prefaced his testimony with the observation that "the available market for dentists is almost zero." He also explained that "there are several dentists operating on that same five blocks and you insert upon that Dr. Dix, who moved out and moved right across the street, it is virtually impossible to get somebody to come in there."

Tending to confirm plaintiff's assertion that it was difficult to interest a dentist in leasing the premises was defendant's own testimony, which revealed that he had notified three dental supply houses of the vacancy and had advertised in the Oregon Dental Journal without success.

Defendant's argument on this assignment of error emphasizes the point that plaintiff could have done more to discover a substitute tenant. It is argued that plaintiff could have contacted the various dental supply firms which, according to defendant, make a practice of assisting dentists in trying to find office space. Plaintiff asserted that he was not aware of this practice. It is further pointed out that plaintiff did not advertise in the Oregon Dental Journal nor in a major metropolitan daily Oregon newspaper. Finally, defendant argues, plaintiff unreasonably insisted on a

rental of $375, thus discouraging prospective tenants who might have taken the premises at a lesser rent.

■ Plaintiff's failure to notify the dental supply houses and to advertise in the Oregon Dental Journal can have no significance in this case in determining whether sufficient steps to mitigate damages were taken. Even if we were to find that the use of these agencies was essential to give adequate notice of the availability of the premises for rental purposes, the fact is that the agencies were used and it can be of no significance that defendant rather than plaintiff took the essential step.

■ The trial court made a finding of fact that "The plaintiff has exercised reasonable diligence to find a tenant for the premises to mitigate the damages caused plaintiff by defendant." It maybe that plaintiff could have done more than he did to make known to prospective lessees the availability of the premises, such as by advertising and posting notices over a longer period of time. But with all of the avenues of dissemination explored by the plaintiff in mind, we are of the opinion that there was sufficient evidence to support the trial court's finding.

Defendant argues that plaintiff did not fulfill his obligation to mitigate damages because he made no effort to lease the premises for less than $375 per month. In support of this contention defendant points to plaintiff's testimony that he might not have been willing to rent the dental offices for less than that amount.[2]

---

[2] The testimony was as follows:

"Q  Have you at any time offered it for less than $375.00 a month?

"A  I can't afford that.

■ ■ In order to mitigate the damages occasioned by a lessee's breach of a lease, the landlord should not be required to substantially alter his obligations as established in the pre-existing lease. Thus in the present case plaintiff was not required to rent the premises to persons not working in dentistry or related fields, since the offices were part of a dental clinic occupied by two other dentists and were designed for that special use. Nor should plaintiff be required to rent the premises below their fair rental value. Defendant did not produce any evidence that $375 per month was not the fair rental value of the dental offices. Under all these circumstances we are of the opinion that plaintiff fulfilled his obligation to mitigate the damages.

The judgment is affirmed.

---

"Q   You would be unwilling to accept a tenant at less than $375 a month?

"A   I would have a hard time doing it. A lot of it is coming out of my pocket right now."