162 N.J. Super. 421 (1978)
392 A.2d 1265
MILLARD SPIALTER, T/A LINDSLEY ARMS APARTMENTS, PLAINTIFF,
v.
PETER TESTA, LOUISE TESTA, AND ANTHONY TESTA, DEFENDANTS.
Superior Court of New Jersey, District Court  Morris County.
July 3, 1978.
*423 Mr. Michael J. Gonnella for plaintiff (Messrs. Menza and Levitan, attorneys).
Mr. Martin A. Newmark for defendants (Messrs. Broderick, Newmark and Grather, attorneys; Mr. Francis G. Grather on the brief).
MACKENZIE, J.C.C. (temporarily assigned).
By cross-motions for summary judgment in this landlord-tenant dispute the court is asked to determine whether a provision in a residential lease providing for a variable percentage payment to the landlord in the event of early unilateral termination by the tenant constitutes an enforceable liquidated damage clause or an unenforceable penalty. The resolution of this novel issue requires consideration of case law dealing with the liquidated damage-penalty clause dichotomy as well as the combined impact of Sommer v. Kridel, 74 N.J. 446 (1977), and the Security Deposit Act, N.J.S.A. 46:8-19 et seq.
Plaintiff (landlord) sues for rent due, contractual damages and counsel fees under a written lease. Defendants (tenants) defend and seek statutory double damages and *424 counsel fees for wrongful withholding of their security deposit. N.J.S.A. 46:8-21.1. There being no genuine contested issue of material fact, this matter is ripe for determination on cross-motions for summary judgment. R. 4:46-2, as made applicable by R. 6:6-1.
On October 25, 1976 plaintiff, trading as Lindsley Arms Apartments, rented a garden apartment unit in Morristown to tenants Peter Testa and Louise Testa under a written lease for a term (expiring October 31, 1977) of one year at the monthly rental of $290. Contemporaneously, tenants delivered to their landlord a security deposit of $435. Anthony Testa signed the lease as guarantor. In addition to the usual definition of reciprocal duties as between landlord and tenant, the lease contains a formula by which the parties purported to fix compensation to the landlord in the event of early termination by tenant. The disputed unnumbered paragraph reads as follows:
EARLY TERMINATION. Lease may be terminated as of the last day of any calendar month by written notice at least 60 days before such termination date and the payment of a consideration equal to 25% of the rents remaining to be paid between the early termination date and the termination date of the lease. Rent is not a consideration and is to be paid for every month of tenancy.
The tenants took occupancy and paid rent only through the month of December. On or about January 4, 1977 they gave written notice of their intention to vacate the apartment. No rent was paid for January. The tenants moved out toward the latter part of that month, having given less than 60 days notice. Their decision to move out was unilateral and admittedly not consented to by the landlord. The landlord re-rented the apartment effective February 8, 1977 at a monthly rental which was at least equal to defendant's rent. Interest on the security deposit amounting to $5.01 had accrued by that date. The security deposit was not thereafter returned to defendants, nor was a written statement itemizing deductions from and withholding of *425 the security deposit timely delivered or mailed by certified or registered mail to tenants.
It is clear that the tenants breached the lease by moving out without either consent of the landlord or legal cause. No other conclusion is possible on these facts. As a result, plaintiff has suffered actual damages for the period of January 1, 1977 to February 8, 1977 during which no rent was paid. In addition to the unpaid rent plaintiff calculates his damages, using the early termination formula, as follows:

 $290.00 unpaid rent for January 1977
 72.45 unpaid rent for the first eight days of February 1977
 634.97 liquidated damages[1]
 _________
 $997.42
 -440.01 credit for security deposit and interest thereon
 +112.00 attorneys fees[2]
 + 15.00 interest
 _________
 $684.41

Defendants contend the early termination clause is either void on its face as a penalty or in its application to these facts, for violation of the public policy of New Jersey. Using contract principles, they argue that any damages resulting from a breach of this lease are not uncertain but readily measurable; that the formula produces a liability which is greatly in excess of any probable actual damage to the landlord; that there was a great inequality of bargaining position between landlord and tenant when the lease was signed, and that in this factual context a contract of adhesion *426 was produced by which the amount provided for constitutes a penalty. Using residential landlord-tenant statutory and decisional references, defendants claim that the landlord is only entitled to credit or set-off against the security deposit the rent for January and the first eight days of February 1977, which constitute his actual damages; that any lease provision which requires payment by tenants for sums in excess of a landlord's actual damages is invalid, and that the Security Deposit Act is intended to protect tenants from overreaching landlords. On their affirmative claim, they seek judgment for double the difference between the security deposit withheld and the landlord's actual damages.
The beginning point must be to restate the principle that courts are required to enforce residential leases according to their terms, absent a superior contravening public policy. Accord, Marini v. Ireland, 56 N.J. 130, 143 (1970); Mury v. Tublitz, 151 N.J. Super. 39, 44 (App. Div. 1977). If the early termination clause is enforceable, plaintiff is entitled to judgment according to his calculations. But, is there a superior contravening public policy? Plaintiff says no. He argues that a lease-breaking tenant could benefit from this clause. Had this landlord, despite making bona fide efforts to re-rent, been unable to secure any new tenant before October 31, 1977, the exposure of these defendants under this formula provision would have been limited to $725. Absent such a clause, their accrued liability would amount to the full rent through the balance of the term, or $2,900. Although hypothetical, this argument has a certain theoretic appeal. How realistic the potential benefit to a defaulting tenant is is not known. No proofs were offered as to the occupancy rate in this particular complex in Morristown or in Morris County in general, nor as to the existence of tenant-waiting lists for apartment units, nor of the need for additional multi-family residential rental units. The fact is, of course, that this landlord found a new tenant in a matter of days.
*427 Defendants argue that the lease clause is unenforceable because it is the product of the unequal bargaining position of the parties. They claim that the contract is one of adhesion in which the damages clause is contrary to public policy. See Kuzmiak v. Brookchester, 33 N.J. Super. 575, 586 (App. Div. 1955); Cardona v. Eden Realty Co., Inc., 118 N.J. Super. 381 (App. Div. 1972). However, no factual finding as to inequality of bargaining position can be made on this record. There may or may not have been a premium on suitable housing quarters which impelled defendants to accept the early termination clause or risk losing the apartment. No contract of adhesion is proven; plenary proofs would be required on this issue. Simply because the clause is favorable to the landlord does not per se render it unenforceable. The converse  that the clause is enforceable  is not necessarily valid. Consideration of decisional authorities respecting the liquidated damages-penalty distinction is required.
The landlord cites D.H.M. Indus. v. Central Post Warehouse, 127 N.J. Super. 499 (App. Div. 1973), aff'd 64 N.J. 548 (1974), in support of his argument that the clause is enforceable as a bona fide definition of liquidated damages. But D.H.M., which involved a commercial lease of a specially constructed building, is inapposite in a residential lease situation. Residential tenancies are governed by a specific body of statutory law and by a body of case law founded on totally different principles than cases involving commercial tenancies.[3] Plaintiff's reliance on *428 Mortgage Corp. of N.J. v. Manhattan Savings Bank, 71 N.J. Super. 489 (Law Div. 1962), another commercial letting case, is likewise misplaced. Aside from its total factual inappositeness, Priebe v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947), is significant because of the emphasis upon the crucial legal point used to determine whether there is a fixed damages clause or an impermissible penalty: specifically, the potential certainty/measurability of damages at the time of making the contract. Courts favor liquidated damage clauses when it would be very difficult or impossible to fix damages upon breach (as in the governmental contract situation involved in Priebe).
A sum of money which is paid by tenants at the inception of the lease may be considered as an agreed-upon amount which is thought by both landlord and tenants to be a fair approximation of the expense the landlord would have to undergo to repair and restore the apartment at the conclusion of the term. Durante v. Gadino, 157 N.J. Super. 132 (Law Div. 1978). The key distinction is the existence of a reasonable relationship between the sum bargained for by the parties at the outset of the landlord-tenant relationship and the anticipated expense of refurbishing the apartment at the cessation of a tenancy. No such relationship between the formula and the landlord's damages exists in this case. Durante further determines that the parties had the right to enter into a contract for refurbishing the apartment. The same parties, on the other hand, would not *429 be entitled to enter into a contract of penalty. Durante does not support plaintiff's position.
The early termination clause at issue does not specifically use the term liquidated damages. That alone is not determinative, for the court must look to substance as well as form. However, a contractual provision posing as a liquidated damage clause is impermissible where damages are easy to ascertain. The contract at issue in Westmont Country Club v. Kameny, 82 N.J. Super. 200 (App. Div. 1964), is an example of an unenforceable agreement as a penalty. There the provision for recovery of the full contract price in the event of breach by the club member not only bore no reasonable relation to actual damage suffered by the country club, but there was no showing that damages arising from the breach or the agreement would be difficult to determine. As a consequence the provision was of no legal effect.
The analysis by Judge Collester of the distinction between liquidated damages and penalty clauses is instructive in its application to this case:
Liquidated damages is the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable as agreed damages if the breach occurs. A penalty is the sum a party agrees to pay in the event of a breach, but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach. McCormick, Damages, § 146, pp. 599-600.
Parties to a contract may not fix a penalty for its breach. The settled rule in this State is that such a contract is unlawful. Suburban Gas Co. v. Mollica, 131 N.J.L. 61, 62 (Sup. Ct. 1943).
In the determination of whether a clause in a contract is one for liquidated damages or a penalty, our courts have set up certain criteria as guides. The construction to be placed upon the clause in dispute is to be decided by considering not only the particular words in the contract, but the whole scope of the bargain, including the subject to which it relates. Monmouth Park Asso. v. Wallis Iron Works, 55 N.J.L. 132, 140 (E. & A. 1892).
An agreement made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the *430 damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimate. 1 Restatement, Contracts, § 339, p. 552 (1932). And see Suburban Gas Co. v. Mollica, supra; 218-220 Market St. Corp. v. Krich-Radisco, Inc., 124 N.J.L. 302, 305 (E. & A. 1939). However, if it appears that the parties have provided for an excessive sum in a case where the real damages are certain or readily reducible to certainty by proof, then the sum fixed is deemed a penalty and is not enforceable. Borden Co., Pioneer Ice Cream Division v. Manley, 127 N.J.L. 461, 463 (Sup. Ct. 1942).
Upon a consideration of the whole agreement, if it is doubtful whether the provision for payment is intended as a penalty or liquidated damages, it will be construed as a penalty, because the law favors mere indemnity. Monmouth Park Asso., supra, 55 N.J.L. at page 141. [at 205-206]
While the exact amount of damages cannot be fixed at the inception of a residential lease  for it is not known when or if the tenant will breach  the damages upon breach are readily ascertainable with certainty. Our Supreme Court has required that a landlord, where he seeks to recover rents from a defaulting tenant for the balance of the term, mitigate damages by making reasonable efforts to relet the apartment wrongfully vacated by the tenant. Sommer v. Kridel, supra, 74 N.J. 446. The court need only determine when, after breach, with reasonable effort exerted, the landlord did or could have re-rented the dwelling unit. The difference defined in money terms constitutes the landlord's damages. Here the landlord was able to find a new tenant within weeks of the cessation of the tenancy by defendants. Defendants do not quarrel that he has met his burden of mitigation.
New Jersey landlord-tenant law follows a basic principle. Landlords in residential tenancies are entitled to actual damages upon breach of lease by the tenant. The landlord is not entitled to any windfall profit when the tenant breaches. The Security Deposit Act bars the landlord from withholding the tenant's security deposit, or setting off against it, absent a showing of "charges expended *431 in accordance with the terms of a contract, lease, or agreement." N.J.S.A. 46:8-21.1. Watson v. United Real Estate, Inc., 131 N.J. Super. 579 (Cty. D. Ct. 1974), involved early termination of the lease by mutual consent of landlord and tenant. The factual distinction as to mutuality prohibits this court from ascribing conclusive effect to the holding. The invalid clause in Watson fixed the entire security deposit (as opposed to a percentage of the balance of rent for the term) as liquidated damages upon the tenant's early termination of the lease. There is, however, some interpretive precedential logical value. Here the apartment was rented from February 8, 1977 (upon reletting) through October 31, 1977 at a monthly rental comparable to that payable by defendants. Liquidated damages are claimed by the landlord for these same months. The early termination clause, if enforced, would provide the landlord with a windfall by the receipt of full rental payment from the new tenant and an entitlement to an additional 25% of that rental payment from defendants. While a landlord should not suffer financial loss where his tenant breaks a lease, neither is he entitled to profit thereby.
Finally, effective August 18, 1976, the Truth-in-Renting Act requires all provisions contained in residential leases to be consistent with New Jersey law in existence at that time.[4]N.J.S.A. 46:8-48 reads in pertinent part as follows:
No landlord shall offer to any tenant or prospective tenant or enter into any written lease after the effective date of this act which includes a lease provision which violates clearly established legal rights of tenants or responsibilities of landlords as established by the law of this State at the time the lease is signed. A tenant shall have the right to petition a court of competent jurisdiction to terminate a lease containing any such provision. Nothing contained herein shall limit any rights or remedies a tenant may have under a lease. [Emphasis supplied]
*432 The statute does not mandate the form or timing of the petition. The answer and counterclaim filed in this action have the appearance and substance of a petition. However, to decide this case it is not necessary to reach such a determination.
The lease covenant in respect to the challenged formula primarily violated the common law contract rights of these defendants-tenants by providing an agreement to penalize them. Secondly, such covenants must not contravene legal rights and/or public policy if they are to be enforced.[5] The challenged provision in this lease of October 25, 1976 is inconsistent with New Jersey law because it calls for payment by tenants of a sum of money which is unrelated to readily ascertainable damages suffered by landlord. The lease represents a legalistic effort to circumvent the positive public policy of this State extant at the commencement of the term. It is so inimical to public policy as to compel an adjudication of invalidity.
The landlord is entitled to retain as actual damages suffered, as defined in N.J.S.A. 46:8-21.1, the unpaid rent for January 1977 ($290) and the pro-rated portion of rent for February until the 8th ($72.45). Under the statute, any retention of the security deposit after expiration of the term is wrongful except to the extent of charges properly expended by the landlord. Only $362.45 of the security deposit was lawfully retained by landlord as a credit or set-off as the result of the occupation of the apartment without paying the rent. The balance of $77.55 should have been returned to the tenants within 30 days of termination of the leasehold (which occurred on February 8, 1977), *433 together with an itemized list of the deductions from the security deposit. Failure to return the unearned portion of the security deposit within that time-frame mandates the statutory double damages penalty. Smith v. Stark, 153 N.J. Super. 48 (App. Div. 1977), resolved the uneasy conflict expressed in the holdings of Watson v. United Real Estate, Inc., supra, and Burstein v. Liberty Bell Village, 120 N.J. Super. 54 (Cty. D. Ct. 1972). Tenants are not deprived of the benefits of the Security Deposit Act merely because they broke the lease. Watson v. Jaffe, 121 N.J. Super. 213, 214 (App. Div. 1972). The act was aimed at over-reaching landlords such as plaintiff.
N.J.S.A. 46:8-21.1 permits the award of reasonable attorney's fees to the tenant successfully prosecuting an action for wrongfully withholding security deposits. Defendants qualify. But for the damage clause which the landlord relied upon, the tenants would have had the refund by March 10, 1977. Without the services of their attorneys it is highly unlikely that they would have obtained their refund at all.
The complaint must be dismissed without costs, and judgment entered on the counterclaim in favor of defendants and against plaintiff for $155.10, with interest at the rate of 8% per annum from March 10, 1977. Defendants are also entitled to $200, which constitutes a reasonable attorney's fee in these circumstances. R. 4:42-9(b), (c).
NOTES
[1] 25% of $2,320, the total of rent that would have accrued for the months of March through October 1977.
[2] Paragraph 40 of the lease provides: "That a Tenant agrees to pay as additional rent, all attorney's fees and other expenses incurred by the Landlord in the enforcement of any of the agreements, covenants and obligations under this lease."
[3] Causes of eviction of commercial tenants are far different from causes for removal of residential tenant (with minor exceptions). Compare N.J.S.A. 2A:18-53 with N.J.S.A. 2A:18-61.1. The substantive defense of lack of habitability which is available to residential tenants is not yet available to commercial lettings. Compare Marini v. Ireland, supra, with Kruvant v. Sunrise Market, Inc., 58 N.J. 452 (1971). A hardship stay of a warrant for removal is available to residential tenants in the discretion of the court where the requirements of N.J.S.A. 2A:42-10.6 are met; no such discretion is applicable to commercial tenants. Charlie Collins Chevrolet v. Zebrowski, 130 N.J. Super. 116 (App. Div. 1974). Note, also, the raft of statutory protections provided to residential tenants exclusively, including for instance: renewal of lease, N.J.S.A. 2A: 18-61.3; nonwaiver of rights established by the 1974 amendments to the Summary Dispossess Act, N.J.S.A. 2A:18-61.4; the Security Deposit Act, N.J.S.A. 46:8-19 et seq.; prohibition against self-help eviction, N.J.S.A. 2A:39-1, and distraint, N.J.S.A. 2A:33-1; landlord registration, N.J.S.A. 46:8-27 et seq.; the bar against reprisal eviction, N.J.S.A. 2A:42-10; the Truth-in-Renting Act, N.J.S.A. 46:8-43 et seq.
[4] N.J.S.A. 46:8-43 et seq.; L. 1975, c. 310, §§ 1-7.
[5] Quare: May a contractual provision which clashes with public policy be reasonable? Covenants in residential leases must be reasonable and made at beginning at the lease term, at least for eviction purposes. N.J.S.A. 2A:18-61.1(e). The logic of the converse of this legal principle, i.e., that unreasonable agreements are invalid, may be compelling but is not necessary to resolve this litigation.