ENOCH C. RICHARDS COMPANY

*vs.*

HARRY C. LIBBY, IN HIS CAPACITY AS THE DULY APPOINTED
EXECUTOR OF THE LAST WILL AND TESTAMENT OF
JULIA E. HODSDON, DECEASED.

Cumberland.    Opinion, January 23, 1940.

*Philip A. Hanson,* for plaintiff.
*Harry C. Libby,* for defendant.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Thaxter, J. This action brought against the executor of the estate of Julia E. Hodsdon was tried before a justice of the Superior Court without the intervention of a jury. The right to except was reserved.

The plaintiff seeks to recover the sum of $400.00 for rent of an apartment for a period of eight months from April 16, 1937 to December 15, 1937, at $50.00 per month. There are also items in the account amounting to $8.65 for gas and electricity furnished and for damage done to the apartment. The presiding Justice found that judgment should be entered for the plaintiff for $403.65. The case is before this Court on ten exceptions of the defendant, some of which are to certain findings made by the court, others to the refusal of requests for rulings. All of the exceptions are without merit but one which we shall consider. There is no dispute as to the facts.

The plaintiff owned and operated an apartment house located at 419 Cumberland Avenue in Portland. The defendant's testatrix through her agent entered into negotiations to rent an apartment in this building. The one which she wanted No. 51 was occupied but was soon to become vacant. Until it should be available it was agreed orally that the prospective tenant might occupy apartment No. 2 at a rental of $50.00 per month. On May 15, when the other apartment became available, the tenant vacated apartment No. 2 without notice and left the building for good. The presiding Justice found that "the occupancy of apartment No. 2 was upon a verbal agreement for an indefinite period upon a monthly payment of rent;" and "that it was a tenancy at will and could be terminated only by the statutory notice or by mutual consent." This was a correct description of the relationship of the parties. When the tenant went the key appears to have been left on the office desk and was taken by Mrs. Richards, the agent in charge of the building with whom all the negotiations had taken place. There is no doubt that Mrs. Richards knew when Mrs. Hodsdon left that she intended to give up the apartment. Mrs. Richards used the key to enter the apartment, which she cleaned and put into condition for a new tenant; and from time to time she showed it to prospective tenants. Apartment No. 51 was

rented in October and apartment No. 2 December 1. The plaintiff seeks to recover rent for apartment No. 2 from April 16 to December 15.

The ruling to which the defendant takes exception is as follows in the words of the presiding Justice:

"At the termination of the occupancy by the defendant's deceased on May 14th the key of apartment No. 2 was left at the plaintiff's office in the building where the apartments were located. The plaintiff used the key to enter and put the apartment into condition for a new tenant, and showed the apartment to prospective tenants. It was let to a new tenant on December 1st.

"I find that the plaintiff did not exercise dominion over the premises when it endeavored to obtain a new tenant, except as was reasonable and necessary to prevent damages from accumulating."

This ruling we think was error. We are aware of the well settled principle that findings of fact by the justice hearing the case are conclusive if there is any evidence to support them. In the case before us, however, the facts are not in dispute and the only inference which can be drawn from them does not in our opinion support the ruling below. Under such circumstances there is error in law to correct which exceptions will lie. *Chabot & Richard Company* v. *Chabot*, 109 Me., 403, 84 A., 892.

The ruling that the landlord did not, by taking the key, by entering the apartment, and by offering it to prospective tenants, accept the surrender of it by the defendant's testatrix is based on no facts or inferences therefrom in the evidence but rather on the assumption of law that such acts were "necessary to prevent damages from accumulating." So long, however, as a tenancy exists the landlord may collect rent in full regardless of actual occupancy of the premises by the tenant. *Withers* v. *Larrabee*, 48 Me., 570; *Rollins* v. *Moody*, 72 Me., 135. Such being the case it must follow that, where there is a wrongful abandonment of premises by a tenant and a refusal to pay rent, the landlord may at his election permit them to remain vacant, refuse to recognize the attempted surrender by the tenant, and bring suit to collect the rent as it comes due. The tenant can not by such action cast a burden on the landlord to find someone to take his place. Such is the overwhelming weight of authority. *The Boardman Realty Co.* v. *Carlin*, 82 Conn., 413, 74 A., 682; *Pat-*

*terson* v. *Emerich*, 21 Ind. App., 614, 52 N. E., 1012; *Haycock* v. *Johnston*, 81 Minn., 49, 83 N. W., 494; *Muller* v. *Beck*, 94 N. J. L., 311, 110 A., 831; *Underhill* v. *Collins*, 132 N. Y., 269, 30 N. E., 576; *Goldman* v. *Broyles* (1911 Tex. Civ. App.), 141 S. W., 283; 14 Ann. Cas. 1088 Note; 40 A. L. R., 190 Note; McAdam on Landlord and Tenant, 5 ed. p. 1375.

The acts of the landlord can not, therefore, be explained on the theory that there was any obligation on its part to mitigate damages, and there is no evidence to indicate that the landlord claimed to be acting for the tenant. The question, therefore, is whether the acts of the parties constituted a termination of the tenancy by operation of law.

There is no doubt that the relationship of landlord and tenant may be terminated by the acts of the parties. *Hesseltine* v. *Seavey*, 16 Me., 212; *McCann* v. *Bass*, 117 Me., 548, 105 A., 130; *Talbot* v. *Whipple*, 14 Allen, 177; *Phene* v. *Popplewell*, 12 C. B. R. N. S., 334; *Dodd* v. *Acklom*, 6 Mann. & G. 672. In two of these cases the facts are very similar to those now before us.

The facts in *McCann* v. *Bass*, supra, are that the defendant leased a store to the plaintiff. Before the termination of the lease the plaintiff vacated the premises for business purposes, returned the key to the defendant and moved to another store. The defendant took control of the store against the will of the plaintiff, remodelled it, let part of it to a tenant and occupied part himself. The Court held in an action brought by the tenant for an eviction that the lease had been terminated by operation of law. The Court said, 117 Me., at page 550, 105 A., at page 131: "That is, when the lessee does the acts which prove his intention to abandon and surrender, like vacating the premises and giving up the key, and the lessor in pursuance of such acts, goes into actual occupation, then, by acts and operation of law, the lease is terminated."

In *Talbot* v. *Whipple*, supra, one Carroll, a tenant at will of the defendant of certain land, had placed thereon a building in which he had installed machinery. In determining the title to this property the Court found it necessary to decide whether the tenancy of Carroll in the real estate had been terminated. The statement of facts shows that Carroll became insolvent; that without paying his rent he stopped work and abandoned the premises and the equipment with the intention of not returning; that he locked the doors hang-

ing the keys inside but left one open through which the defendant entered and took possession; that no notice was ever given by either party to the other that the tenancy was to end. In holding that the tenancy had terminated the Court said, page 188: "The facts in the present case are of the most unequivocal character on the part of both landlord and tenant, and leave no room for doubt as to the intent of the parties."

In the case before us it is apparent from the testimony of both Mrs. Stewart, who acted as Mrs. Hodsdon's agent, and of Mrs. Richards, the manager and agent of the plaintiff, that Mrs. Richards knew that Mrs. Hodsdon, when she left, intended to give up apartment No. 2. There were complaints between the parties. Mrs. Richards said that apartment No. 51 was ready, Mrs. Stewart replied that they weren't going to take it. Mrs. Richards then found fault because she had not been given a month's notice; but at the same time gave no intimation that she intended to hold Mrs. Hodsdon as a tenant. The key was left on the office desk. Mrs. Richards took the key, entered the apartment, cleaned it, made it ready for a new tenant and showed it to prospective tenants from time to time. Her conduct was unequivocal; she made no attempt to qualify it. Every act done is inconsistent with the present claim that the tenancy of Mrs. Hodsdon continued.

Most significant is the response of Mrs. Richards to a question by the court as to whether she was holding an apartment for Mrs. Hodsdon if she decided to come back.

"THE COURT: Which apartment was it you said you would hold for her.

"A. I was holding, really, either one; because in the spring of the year that is a hard time to let apartments anyway. I couldn't hold one just separately for her and not rent it if I had a chance."

This language certainly shows that Mrs. Richards claimed the right after Mrs. Hodsdon left to put a new tenant in apartment No. 2 whenever she had the chance to do so. It is utterly inconsistent with the present contention of the plaintiff that Mrs. Hodsdon remained a tenant of that apartment during the succeeding months with the right to be given thirty days' notice before her tenancy could be terminated.

*Exceptions sustained.*

(DUNN, C. J., having deceased, did not join in this opinion.)