Bernhoff A. DAHL

v.

Edward COMBER.

Supreme Judicial Court of Maine.

Argued March 3, 1982.

Decided April 26, 1982.

Gross, Minsky, Mogul & Singal, Carl F. Rella (orally), Nathan Dane, III, Bangor, for plaintiff.

Twitchell, Linscott & Badger, Frederick J. Badger, Jr. (orally), Willard H. Linscott, Bangor, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

McKUSICK, Chief Justice.

Following a bench trial in this suit for rent and other damages, the Superior Court (Penobscot County) entered judgment in the amount of $27,110 for plaintiff-landlord Dahl. Defendant-tenant Comber brings this appeal. All of the issues argued by the

parties on appeal reduce to the single question whether there was an effective surrender of the lease by the tenant and acceptance of that surrender by the landlord. The justice below resolved that question adversely to defendant-tenant. Finding that decision adequately grounded in the record, we affirm.

Comber and his business associate, Clermont Maheux,[1] leased from Dahl an industrial building located in Hermon that the latter constructed specially for them. The written lease agreement was to run from August 1, 1978, to July 31, 1983. It obligated the tenants to pay $1,252 in monthly rent, in return for the use of 6,400 square feet, and gave the tenants options to lease the remaining space in the building and to purchase the building for $135,000. On November 1, 1978, Comber and Maheux exercised their option to lease the remainder of the building. The amended lease prescribed a monthly rent of $1,852 and raised the option purchase price to $141,400.

The tenants' business, which was the fabrication and testing of firearms through a corporation named Bushmaster Firearms, almost immediately fell on hard times, and Comber and Maheux failed to meet their rental obligation for the months of April, May, and June, 1979. They did, however, pay the full rent due for the month of July.

On August 16, 1979, Dahl obtained a writ of possession for the leased premises. Richard Dyke had in the meantime taken control of Bushmaster Firearms in an attempt to rescue the business. Rather than find an entirely new tenant for his custom-designed building, Dahl entered into a lease with the corporation for a term of five months starting August first, the lease being guaranteed by Dyke and carrying the same monthly rental as the Comber-Maheux lease. At trial Dahl testified that he had neither intended nor manifested an intent to release Comber and Maheux from their five-year lease agreement. On the other hand, Com-

ber testified that Dahl had been "very receptive" to the idea of accepting a "substitute tenant," although he could not recall if Dahl had used the word "release."

Under Dyke's management, the reorganized business stayed on as a tenant past the expiration of the interim agreement, continuing to pay rent through February, 1980. When the business finally ceased at the premises, Northeast Bank paid for two additional months' rent to give it time to conduct an auction of the firm's machinery on the premises. Dahl got none of the proceeds of that auction. He succeeded in reletting only parts of the building to other tenants; he conducted a fruitless search for a new tenant to use the whole structure and put the property on the market for sale for $196,800.

■ In this action for rent and damages, the trial justice held for Dahl, finding that there was not any effective surrender of the leased premises by the tenants, nor any acceptance of the surrender by the landlord. On appeal, Comber argues that Dahl's consent to a "substitute" tenant (Bushmaster Firearms, guaranteed by Dyke) constituted acceptance of Comber's surrender of the lease, thereby discharging him from further liability for rent. The existence of surrender and acceptance depends on the intent of the parties and is a question of fact. Moreover, the tenant bears the burden of proof that his attempted surrender was accepted by the landlord. *See Grueninger Travel Service v. Lake County Trust Co.*, 413 N.E.2d 1034, 1038 (Ind.App.1980). In this case, the evidence against termination by surrender included 1) Dahl's testimony as to his subjective intent; 2) the equivocal nature of the manifestations of Dahl's intent testified to and relied upon by Comber; and 3) paragraph 10 of the lease forbidding cancellation or surrender of the lease except by a writing signed by the landlord.[2] There being com-

---

1. In the Superior Court Maheux was a named defendant against whom judgment was entered jointly and severally with his co-tenant, Comber. Maheux has not appealed.

2. Paragraph 10 of the lease reads in full as follows:

The failure of the Landlord to insist in any instance on strict performance of any covenant hereof, or to exercise any option herein

petent evidence in the record to support the conclusion that Comber failed to carry his burden of proof, we cannot say that the justice below clearly erred in her finding that there was no surrender and acceptance. *See Harmon v. Emerson*, Me., 425 A.2d 978, 981 (1981); M.R.Civ.P. 52(a).

■ Alternatively, the tenant, Comber, argues that in subsequently reletting parts of the building to other tenants after Bushmaster's demise but during the term of the unexpired lease, Dahl (who claims only to have been acting for Comber's account to mitigate damages[3]) effectively accepted surrender of the leasehold. This alternative argument of Comber is in part founded on paragraph 9 of the lease agreement,[4] which provides that "[i]n case of default by the Tenant in the payment of rent, ... the Landlord may at any time thereafter re-

contained, shall not be construed as a waiver of such covenant or option in any other instance. No modification of any provision hereof and *no cancellation or surrender hereof shall be valid unless in writing, and signed by the Landlord.*
(Emphasis added)

3. In absence of an agreement to the contrary, a landlord has no obligation to mitigate damages where the tenant defaults in paying rent and even abandons the leased premises. *See Enoch C. Richards Co. v. Libby*, 136 Me. 376, 10 A.2d 609 (1940); 1 *Restatement (Second) of Property* § 12.1, comment i at 391–92 (1977). The *Restatement* suggests the following as the reason for the rule:

Abandonment of property is an invitation to vandalism, and the law should not encourage such conduct by putting a duty of mitigation of damages on the landlord.

*Id.* at 392, 10 A.2d 609.

Even though under no duty to mitigate damages by reletting premises abandoned by the tenant, a landlord may nonetheless do so for the tenant's account. *Id.* at 390, 10 A.2d 609. In that event, the tenant remains liable for any shortfall in what the landlord collected from the substitute tenant, and that shortfall is rent and not damages. *Id.* at 391, 10 A.2d 609. Nonetheless, the landlord's action is not inappropriately referred to as mitigation of "damages." Even though the landlord has a cause of action against the tenant for the full amount of the previously stipulated rent, it is obviously also to the landlord's advantage to have the premises occupied as a protection against vandalism and deterioration and also to have a new occupant who will pay for the right of occupancy without litigation.

sume possession [of the building] by any lawful means ... and hold the premises as if this lease had not been made." Thus, Comber urges a construction of this clause that would have resulted in rescission of the lease agreement upon Dahl's taking possession. When read in context, however, the ambiguous language of paragraph 9 is equally amendable to interpretation as assuring the landlord the right, in order to mitigate damages, to reenter and relet the premises after the tenant's default. The paragraph 9 language relied on by Comber must be read along with the other provision of that paragraph stating that after his surrender of the premises, "the Tenant shall remain liable as hereinafter provided." The phrase "hereinafter provided" has meaning only if it refers to paragraph 18 of the lease

4. Paragraph 9 of the lease reads in full as follows:

If the Tenant defaults in the performance *of any of the covenants or conditions herein* contained, other than the covenants to pay rent, or if any conduct of the Tenant or occupants of the leased premises shall be objectionable, the Landlord may give to the Tenant ten days' written notice thereof, and if such default has not been cured or the objectionable conduct stopped within said ten day period, then at the expiration of said ten days the Landlord may give the Tenant five days' notice of the termination of this lease, and at the expiration of said five days' notice the term of this lease shall expire, and the Tenant *shall then surrender the leased premises to* the Landlord, but *the Tenant shall remain liable as hereinafter provided.* In case of default by the Tenant in the payment of rent, or if the ten day notice above provided for shall have been given and the ten day period shall have elapsed without curing such default or stopping the objectionable conduct, and the five day notice above provided for shall have been given and the five day period shall have elapsed, or if the leased premises become vacant or deserted, the Landlord may at any time thereafter resume possession thereof by any lawful means, and remove the Tenant or other occupants and their effects, by dispossess proceedings, or otherwise, without being liable to prosecution or damage therefor, and hold the premises as if this lease had not been made.
(Emphasis added)

entitled "Payment of Rent" and prescribing the obligation of the tenant to pay rent to the landlord "when due," by hand delivery or mail. Since the parties offered no parol evidence to clarify their intent in drafting paragraph 9, construction of the ambiguous language constituted a question of law. *See Country Business Services, Inc. v. Crawford*, Me., 432 A.2d 1315, 1317 (1981). The justice below necessarily rejected Comber's interpretation and held that Dahl could, consistent with the terms of the agreement, relet the building after default without forfeiting his right to future rent from the original tenants. While the Law Court owes no deference to the Superior Court's legal conclusions, *see id.*, we approve of that construction as comporting with both the whole language of the lease and with what would be the rational intent of both parties at the time of contracting. It was in the interest of them both that the landlord mitigate damages after the tenant's default, rather than allow the building to stand idle and hold the tenant liable for the full amount of the rent due under the lease, as Maine law permits a landlord to do. *See* note 3 above. We agree with the conclusion, implicitly embraced by the Superior Court, that the parties sought to encourage mitigation of damages by Dahl, by contracting that upon the tenant's default Dahl at his option was free to relet without disturbing the tenant's underlying obligation for rent.[5]

Comber also makes his attack against Dahl's reletting on the basis of a pair of Maine cases. In *Callahan v. Roberts*, 127 Me. 21, 140 A. 687 (1928), the Law Court said:

> A tenant who abandons the occupancy of demised premises before the expiration of the lease, without the express or implied consent of the landlord or other

legal justification, does not relieve himself thereby from payment of rent for the residue of the term. In case, however, the landlord, having resumed possession of the abandoned premises, relets them *on his own account*, it must be assumed that, as of the time of the reletting, he accepts a surrender and relieves the tenant from liability for future rent accruals.[6]

(Emphasis added) *Id.* at 24, 140 A. at 688. In *Enoch C. Richards Co. v. Libby*, 136 Me. 376, 10 A.2d 609 (1940), a landlord was held to have accepted surrender of the lease by reletting because 1) there being no duty on landlord to mitigate damages following abandonment by tenants, the landlord could not be said to have relet pursuant to a legal duty, and 2) there was "no evidence to indicate that the landlord claimed to be acting for the tenant." *Id.* at 378–79, 10 A.2d at 610.

Neither of those cases says that reletting by a landlord necessarily constitutes acceptance of the tenant's surrender of his lease. Rather, both hinge on the factual question whether the landlord relet "on his own account" or for the benefit of the tenant. The case law calls for a subtle, factual inquiry by the trial court: did the landlord relet to spare the defaulting tenant from paying the full rent he would otherwise be liable to pay, or did he in fact treat the lease as terminated and later in court seek to deny the termination? The justice below made no express finding of fact on this point, but her decision must be deemed to incorporate a finding that Dahl acted, not on his own account, but rather on Comber's account in order to reduce the amount of rent due from Comber. *See Conover v. Conover*, Me., 403 A.2d 352, 353–54 (1979). Dahl's testimony certainly buttresses that

---

5. We do not mean to hold out paragraph 9 as an example of good draftsmanship. It is to the advantage of both landlords and tenants to delineate more clearly than was done here exactly what rights and duties are contemplated under lease agreements. A good example of a lease provision assuring the landlord the right to reenter and relet without accepting surrender is section 10.1 of the contract at issue in

*Grueninger Travel Service v. Lake Country Trust Co.*, 413 N.E.2d 1034, 1042–43 (Ind.App. 1980).

6. The quoted language is dictum, since the plaintiff landlord in *Callahan* admitted that she relet on her own account, and accordingly sought damages only for the period between the tenant's breach and the reletting.

presumed finding, as does the interpretation of paragraph 9 that the trial justice obviously adopted. Once again, there was no clear error in the justice's implicit determination.

Since the record supports the view that upon Comber's default in his obligation to pay rent Dahl merely attempted in good faith to mitigate the damages, the finding below that there was no effective surrender and acceptance is unassailable on appeal.

The entry must be:

Judgment affirmed.

All concurring.