192 N.J. Super. 536 (1983)
471 A.2d 439
JOHN CARISI T/A ALBANO FASHION SHOES, PLAINTIFF,
v.
BERNARD WAX, T/A PETER PAN, DEFENDANT.
Superior Court of New Jersey, District Court, Bergen County.
September 6, 1983.
*537 Richard P. Galler for plaintiff (Gladstone, Hart & Rathe, attorneys).
William Hogan for defendant (Lesser & Hogan, attorneys).
YANOFF, J.S.C. (temporarily assigned retired, on recall).
This opinion is an extension of an oral opinion rendered September 6, 1983.
This case involves the question whether a commercial landlord has an obligation to mitigate damages upon tenant's breach of a commercial lease. This is precisely the issue reserved by our Supreme Court in Sommer v. Kridel, 74 N.J. 446 (1977), at 456 n. 4. In Ringwood Associates, Ltd. v. Jack's of Route 23, 166 N.J. Super. 36 (App.Div. 1979), the trial court decided that question, but the Appellate Court concluded that it was not necessary to do so in the context of the facts there applicable. It said:
We disagree with the trial judge's contract law analysis to the extent that it relies upon an extension of the residential landlord's duty to mitigate damages to commercial landlords. See 153 N.J. Super. [294] at 306-308. This extension of Sommer v. Kridel, 74 N.J. 446 (1977), was unnecessary. Since the trial judge correctly determined that plaintiff's predecessor in title materially breached the assignment clause, thus entitling defendant to vacate, there was no need to reach the question of damages. Adoption of the Sommer approach was perfectly appropriate in reaching the conclusion that contract rather than property law principles controlled the analysis of this case. But there was no need to cast that conclusion in terms of the rule of mitigation of damages. Indeed, the Supreme Court in Sommer v. Kridel, supra at 456 fn. 4 specifically reserved `for another day' decision on the extension of the duty to mitigate damages to commercial landlords. There is no need in this case to anticipate the ruling. [Id. at 46.]
In my view, in this case it is necessary to consider the question.
Also involved here were whether the landlord had unreasonably refused to permit the tenant to sublet or assign the question decided in Ringwood Associates, Ltd., and whether the landlord had in fact attempted to mitigate damages. As to these issues, I made factual findings which resolve the problems.
*538 I concluded that the landlord had not unreasonably refused to permit the tenant to sublet or assign. By applying instances described in Sommer, 74 N.J. at 459, in which the landlord had "utilized satisfactory efforts in attempting to mitigate damages" and the principle there enunciated that "... each case must be judged upon its own facts," I concluded that in the case at bar the landlord had made reasonable efforts to mitigate damages only when he consulted a realtor, or engaged a realtor, for the purpose of re-renting the premises in April 1983.
Another issue presented here was whether landlord had erroneously connected electrical services to tenant's meter, so that the tenant was paying for electricity consumed by the landlord. This too was resolved by a finding of fact in favor of the tenant. It needs no further discussion.
There is unquestionably a divergence of authority on whether there is any obligation upon a landlord to mitigate damages upon default by the tenant. The view that there is no such obligation is developed in Gruman v. Investors Diversified Services, 247 Minn. 502, 78 N.W.2d 377 (1956). Cited therein, at page 379 is an impressive list of authorities. The same view is expressed in 1 Restatement (Second) of Property § 12.1(3), and 11 Williston on Contracts (3d 1968) § 1403 at 560.
In Marini v. Ireland, 56 N.J. 130 (1970), the origins of the present controversy were set forth. There, it was stated: "A lease was originally considered a conveyance of an interest in real estate. Thus, the duties and obligations of the parties, implied as well as express, were dealt with according to the law of property and not the law of contracts." [at 141] The court then proceeded to rule that, at least as to residential lettings, covenants in a lease were mutually dependent, controlled by contract principles. It expressly disavowed Peters v. Kelly, 98 N.J. Super. 441 (App.Div. 1968), which applied the old law. In so doing, the Marini court followed Reste Realty Corporation v. Cooper, 53 N.J. 444 (1969). In that case, commercial premises had been flooded over a period of time, as a result of which the *539 tenant was forced to vacate. The question was whether the tenant was obligated to pay rent even though he had in effect been dispossessed. The court reasoned that the covenant to pay rent and the covenant of quiet enjoyment were mutually dependent, applied contract principles, and held that a breach of the covenant of quiet enjoyment was a defense to an action to pay rent.
In Kruvant v. Sunrise Market, Inc., 58 N.J. 452 (1971), mod. o.g., 59 N.J. 330 (1977), the case turned upon whether the controversy between landlord and tenant had been submitted to arbitration. However, in the course of its opinion, the court said:
The opinion of the trial court did, however, make the flat statement that Marini is not applicable to commercial leases. The statement was unnecessary to the conclusion because here Marini was clearly not applicable by virtue of the fact that this lease was negotiated at arm's length between parties of equal bargaining power and of the lease provisions agreeing to arbitration of all disputes and requiring the payment of rent during arbitration. When and under what circumstances the doctrine of Marini should be applied in other than residential situations is a matter we leave open for future determination in an appropriate case. [Id. at 456.]
There is substantial authority which supports the proposition that upon tenant's breach of lease, whether residential or commercial, the landlord is subject to the avoidable consequences rule. Clearly, this is the current trend of the law, a logical consequence of views expressed in Reste Realty, supra, and Marini, supra, that leases are to be considered not as conveyances but contracts. In D. Dobbs, "Handbook on the Law of Remedies," § 12.6 at 829 (1973), the author states:
The theory of a lease of real property is that it is a sale of an interest in land and not merely a contract. From this it has seemed to some to follow that the landlord, having `sold' the land, is free to ignore what the tenant does with it. The theory is a dubious one. In a day when leases are full of contractual covenants, the feudal characterization of the transaction as the transfer of a property interest seems unrealistic. And, even were [sic] it is deemed sufficiently sensible, it would not necessarily follow that the landlord should indulge in the economic waste of ignoring the tenant's default merely because the lease is considered a `sale' instead of a contract.
Case law supports the proposition that even in a commercial letting the landlord is obligated to minimize damages. See *540 Wichita Properties v. Lanterman, 6 Kan. App.2d 656, 633 P.2d 1154 (1981); Millison v. Clarke, 287 Md. 420, 413 A.2d 198 (1980); Wilson v. Ruhl, 277 Md. 607, 356 A.2d 544 (1976); Jefferson Development Co. v. Heritage Cleaners, 109 Mich. App. 606, 311 N.W.2d 426 (1981); Bernstein v. Seglin, 184 Neb. 673, 171 N.W.2d 247 (1969); Isbey v. Crews, 55 N.C. App. 47, 284 S.E.2d 534 (1981); Mar-Son, Inc. v. Terwako Enterprises, Inc., 259 N.W.2d 289 (N.D. 1977); Wright v. Baumann, 239 Or. 410, 398 P.2d 119 (1965).
For a collection of cases on the subject, see Annotation "Landlord's Duty, on Tenant's Failure to Occupy, or Abandonment of, Premises, to Mitigate Damages by Accepting or Procuring Another Tenant," 21 A.L.R.3d 534. The New Jersey cases referred to at p. 553 and elsewhere in the Annotation have been modified or overruled by Reste Realty, supra, and Marini, supra.
Were it not for the quoted extract from Kruvant, it would seem inevitable that the principles that lettings are to be construed as contracts and that applicable contract principles require a landlord to take measures to mitigate damages upon breach by the tenant would control. Certainly, the court in Ringwood Associates, Ltd. was of that opinion. However, the limitations expressed in Kruvant cannot be ignored at the trial level. In this case, as in Kruvant, it was argued that the parties entered into an arms-length commercial transaction, as the result of which the landlord had no obligation to minimize damages. The argument in this case is that the terms of the lease exempt landlord from the duty to mitigate damages. It therefore becomes a question of interpretation of the lease to determine whether this is factual.
Here, it is conceded that the lease contains no explicit language which exonerates the landlord from the rule of avoidable consequences. The lease provides that if the premises become vacant, the landlord shall have the right to enter the premises as the agent of the tenant, without being liable for prosecution or *541 damages, and it authorizes the landlord "to relet the premises as the agent of the tenant and receive the rent therefrom upon such terms as may be satisfactory to the landlord...." It also provides that "Such re-entry by the landlord shall not operate to release the tenant from any rent to be paid ... hereunder during the full term of this lease."
The lease also provides that the rent for the specified term shall be the sum of $30,000 which shall accrue at a varying yearly rate over a five-year period, and shall be payable at a monthly rate, also varying over the five-year period.
One case has considered language very similar to that involved here. In Dahl v. Comber, 444 A.2d 392 (Me. 1982), landlord leased part of the demised premises after breach by the tenant. In a suit by landlord, apparently for the difference between the rent reserved and the amount received from the partial leasing, there was a judgment for landlord. On appeal, tenant argued that "... In subsequently reletting parts of the building to other tenants ... during the term of the unexpired lease [landlord] ... effectively accepted surrender of the leasehold." Id. at 394. As to that point, the Supreme Judicial Court affirmed the trial court's findings. In dealing with the lease provisions, the Court said:
While the Law Court owes no deference to the Superior Court's legal conclusions, see id., we approve of that construction as comporting with both the whole language of the lease and with what would be the rational intent of both parties at the time of contracting. It was in the interest of them both that the landlord mitigate damages after the tenant's default, rather than allow the building to stand idle and hold the tenant liable for the full amount of the rent due under the lease, as Maine law permits a landlord to do.... We agree with the conclusion, implicitly embraced by the Superior Court, that the parties sought to encourage mitigation of damages by Dahl, by contracting that upon the tenant's default Dahl at his opinion was free to relet without disturbing the tenant's underlying obligation for rent. [Id. at 395.]
The position of the Maine case, that there is no duty to mitigate damages unless it is imposed by the lease, is supported by Metroplex Glass Center v. Vantage Properties, 646 S.W.2d 263, 265 (Texas App., 1983). Both these cases are premised on a rule of law that under no circumstances is a landlord obligated to mitigate damages upon tenant's breach.
*542 In this state the contrary proposition as to residential leases is clear. Sommer, supra. As emphasis upon the landlord's obligation to minimize damages, the court there stated:
As part of his cause of action, the landlord shall be required to carry the burden of proving that he used reasonable diligence in attempting to re-let the premises. We note that there has been a divergence of opinion concerning the allocation of the burden of proof on this issue.... . While generally in contract actions the breaching party has the burden of proving that damages are capable of mitigation, see Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 455 (App.Div. 1976); McCormick, Damages, § 33 at 130 (1935), here the landlord will be in a better position to demonstrate whether he exercised reasonable diligence in attempting to re-let the premises. [Id. 74 N.J. at 457.]
If we posit the proposition that this rule is applicable also to commercial lettings, unless the parties have explicitly contracted otherwise, interpretation of the lease provisions involved here becomes simpler because no such agreement was made. The premise that leases are to be considered contracts rather than conveyances of land, follows inescapably from Reste Realty, Marini and Sommer. Coupling Sommer with the language in Kruvant, supra, the correct rule in this state would seem to be that in a residential leasing the parties may not by contract obviate tenant's right to have the landlord mitigate damages, but that in a commercial leasing they may so agree. In this case there was no such agreement. Therefore, landlord's recovery against tenant for unpaid rent has been diminished by the sum which landlord would have received had he mitigated damages.