707 A.2d 490

HARRISON RIVERSIDE LIMITED PARTNERSHIP, PLAINTIFF–RESPONDENT, v. EAGLE AFFILIATES, INC., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1997—Decided April 3, 1998

Before Judges STERN, KLEINER and KIMMELMAN.

*John J. Markwardt* argued the cause for appellant (*Markwardt & Sander,* attorneys; *Mr. Markwardt,* on the brief).

*D. Mark Leonard* argued the cause for respondent (*Horowitz, Rubino & Patton,* attorneys; *Mr. Leonard,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Defendant former tenant appeals from the grant of a partial summary judgment in the amount of $259,256 which has been certified as final pursuant to *R.* 4:42–2. The judgment was based on the trial judge's letter opinion dated January 3, 1997 which concluded that even in the absence of plaintiff's reasonable efforts

to mitigate damages, plaintiff would be entitled to the difference between the fair market rental value ($3.00 net per square foot) and the rent due under defendant's lease ($4.85 net per square foot) for the period May 1, 1995 through July 31, 1996, together with the difference between the new lease rental ($2.15 net) [1] and the rent due under defendant's lease for the balance of the term from August 1, 1996 through August 31, 1997.

Defendant has consistently maintained that plaintiff failed to mitigate damages with respect to re-rental of the 49,500 square foot warehouse leased by plaintiff to defendant for the period September 1, 1992 through August 31, 1997. Defendant vacated the premises in or around July 1994.[2] Quik Apparel Marketing Service Corp. ("Quik Apparel") leased the premises as of August 1, 1996 at an initial rate of approximately $2.15 per square foot net but which increased to approximately $3.25 net after defendant's lease term would have otherwise terminated in August 1997.

Defendant argues before us that (1) the trial court used a wrong legal standard because "defendant's obligation to pay rental was terminated and the defendant was completely excused from paying any further rent" by plaintiff's failure to mitigate, (2) plaintiff had the burden to prove mitigation and its losses whereas the Law Division's decision is based on facts not proved by evidence and assumptions based thereon, and (3) plaintiff has not proved that Quik Apparel is paying true market value and the court misunderstood the true rent it is paying. Plaintiff argues that the grant of partial summary judgment was "entirely appropriate and, if anything, several hundred thousand dollars *too low*." It contends that it was entitled to at least the awarded "market/lease differen-

---

[1] As we understand it, this figure was based on a calculation of the average net rental value over the first year of the five year lease with Quik Apparel, a tenant which leased the premises commencing August 1, 1996.

[2] On April 10, 1997 we modified and affirmed a partial summary judgment awarding plaintiff $199,487.96 for the period from the time of dispossess through April 1995. We found no genuine dispute regarding the duty to mitigate during that period.

tial ... even in the absence of proof of reasonable mitigation efforts."

█ There is no dispute that a commercial landlord must make "reasonable" efforts to mitigate its damages after a tenant breaches the lease. *McGuire v. City of Jersey City,* 125 *N.J.* 310, 320–21, 593 *A.*2d 309 (1991); *accord Fanarjian v. Moskowitz,* 237 *N.J.Super.* 395, 405–06, 568 *A.*2d 94 (App.Div.1989). The trial judge so recognized.

Defendant contends that had plaintiff acted more reasonably, it would have found a successor tenant at an earlier date or would have obtained a higher rent from Quik Apparel. Defendant also claims that plaintiff's initial lack of reasonable efforts may have led it to enter the unfavorable agreement it ultimately made with the new tenant. It therefore asserts that, if plaintiff did not make reasonable efforts to mitigate, and defendant prevails on that factual dispute at trial, plaintiff would be entitled to no damages. We disagree with defendant's argument that the failure to mitigate precludes any recovery.

The trial judge concluded that there was, in fact, a genuine dispute as to the reasonableness of plaintiff's efforts to mitigate, but nevertheless concluded that it was entitled to partial summary judgment. We agree.

There is no genuine dispute that the original $4.85 rental was well above the fair market rate as of the time defendant terminated its tenancy. In fact, the expert proofs submitted to the motion judge by both parties reflected a range in the assessment of fair market value from $1.25 to $3.00 net per square foot. Thus, the differential for the period before the Quik Apparel lease was at least the difference between the $3.00 figure used by defendant's expert and the rent due under defendant's lease.

█ In these circumstances, we see no reason why plaintiff must await trial regarding material issues in dispute concerning the reasonableness of plaintiff's efforts to mitigate and the fair rental value. Even if plaintiff did not act reasonably, it would

nevertheless be entitled to recovery of the difference between the net square footage rate under the lease and the fair market value in a declining market. *Cf. Kuhn v. Spatial Design, Inc.*, 245 *N.J.Super.* 378, 385–87, 585 *A.*2d 967 (App.Div.1991) (adopting the provisions of the Uniform Commercial Code, *N.J.S.A.* 12A:2–706 and –708, in determining a seller's damages for breach of contract to purchase real estate; *see also Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 529–30, 666 *A.*2d 146 (1995); *Carisi v. Wax*, 192 *N.J.Super.* 536, 542, 471 *A.*2d 439 (Dist.Ct.1983) (in commercial setting where lease does not excuse duty to mitigate the "landlord's recovery against tenant for unpaid rent has been diminished by the sum which landlord would have received had he mitigated damages"); *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 *S.W.*2d 293, 299 (Texas 1997) ("landlord's failure to use reasonable efforts to mitigate damages bars landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided"); *cf. Ingraham v. Trowbridge Builders*, 297 *N.J.Super.* 72, 83, 687 *A.*2d 785 (App.Div. 1997) (duty to mitigate relates to " '[t]he amount of loss that . . . could reasonably have been avoided,' " quoting *Restatement (Second) of Contracts*, § 350, comment b (1981). In granting partial summary judgment, the trial judge gave defendant the benefit of the doubt and used the highest assessment of fair market value, as stated by defendant's expert, in determining defendant's obligation for the period prior to the re-leasing. We therefore affirm the grant of partial summary judgment in the amount of $114,469 for the period May 1, 1995 through July 31, 1996.[3]

However, while we agree that plaintiff is also entitled to partial summary judgment for the unexpired period of the lease after the Quik Apparel tenancy commenced on August 1, 1996, there is a

---

[3] We note that in recognizing a commercial landlord's duty to mitigate, the holding for tenant in *Fanarjian v. Moskowitz, supra,* may be read to preclude any recovery when the landlord fails to mitigate. However, *Fanarjian* did not examine whether partial recovery should be permissible, and it was decided before *Spatial Design* adopted the U.C.C. damages provision with regard to a real estate sale transaction, to permit recovery in a falling market.

genuine dispute regarding the amount of that lease itself and the rental due in the first year [4] as well as whether the Quik Apparel lease was drafted in such a way as to reduce the rent due at the outset of the term so as to maximize plaintiff's recovery in this case. Under these circumstances, we are satisfied that, while partial summary judgment is warranted for the period August 1, 1996 through August 31, 1997, it should be based on the difference between the $4.85 due under defendant's lease and the $3.00 fair market value used by defendant's expert for the period before the Quik Apparel lease commenced. The grant of partial summary judgment for the period August 1, 1996 through August 31, 1997 is so modified.

Whether the landlord's efforts to mitigate its damages were reasonable is a question of fact. *Ingraham v. Trowbridge Builders, supra,* 297 *N.J.Super.* at 84, 687 *A.2d* 785. Therefore, the trial proceedings will consider whether plaintiff took reasonable steps to mitigate its damages and whether the first year's rental under the Quik Apparel lease represented an arm's length fair market rental value. If plaintiff acted reasonably, it will be entitled to recover the entire rental value of $4.85 per square foot, minus both the amount determined to be the actual lease amount of the Quik Apparel lease during the period of its possession and the amounts of the partial summary judgments granted.

Accordingly, we affirm the grant of summary judgment as modified herein. No costs.

---

[4] Plaintiff explains the rental as follows:

The average rent during the mitigation period (months 1–13) is $.62 per square foot "gross." Taxes in 1996 were $1.16 per square foot; the final rate for 1997 will not be known until the Fall of 1997, but it is virtually certain to be higher than in 1996. Thus, since Quik Apparel's lease is "gross taxes", requiring Harrison (not Quik Apparel) to pay real estate taxes, Quik Apparel's net rent is a *negative* number,—$.54 per square foot, during the mitigation period. Even when averaged over Quik Apparel's 5–year lease term, the net, non-discounted average rental is only $2.12 per square foot, which is the $3.28 average "gross" rent, less taxes of $1.16 per square foot. [ (Citations omitted).]