STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-2016-33


H&B REALTY, LLC,                          )
                                          )
   Plaintiff/Counterclaim Defendant,       )
                                          )
         v.                             )
                                          )
JJ CARS, LLC & JOHN MOKARZEL,             )        ORDER FOLLOWING BENCH TRIAL
                                          )
   Defendants, Counterclaim Plaintiffs,   )
   & Third Party Plaintiffs,              )
                                          )
         v.                             )
                                          )
STERLING BOYINGTON,                       )
                                          )
   Third Party Defendant                  )


This case involves A commercial lease dispute, and a claim that the landlord racially discriminated against the tenant's sublessees.  The case was tried to the Bench on October 30, 2019. Sterling Boyington ("Boyington") testified on his own behalf, and on behalf of H&B Realty, LLC ("H&B").  John Mokarzel ("Mokarzel") testified on his own behalf, and on behalf of JJ Cars, LLC ("JJ Cars").  Witnesses Justin Hynes, Abderrahim Lembarra, Shirley Deschenes, and Garrett Chapman also testified.  The parties submitted proposed Findings of Fact and Conclusions of Law on November 27, 2019.  For the reasons discussed below, the Court determines that the parties have not prevailed on their respective claims. Accordingly, the Court grants judgment in favor of Defendants, Counterclaim Defendant, and Third Party Defendant on the respective claims.

1

# FINDINGS OF FACT

The Court has carefully weighed the credibility of the parties and witnesses, who often provided conflicting testimony. Based on the stipulations of the parties and the evidence adduced at trial, and drawing all reasonable inferences there from, the Court makes the following findings of fact.

At all relevant times, H&B was the owner of the premises situated at 220 Riverside Street, Portland, Maine, and Boyington was the sole member of H&B. Boyington operated a car dealership on the property. In 2011 Boyington decided to stop running the dealership and he put up a sign that the property was for lease. Mokarzel saw the sign and decided he would like to operate a car dealership at the property. Mokarzel created JJ Cars for that purpose. Mokarzel was the sole member of JJ Cars.

On May 25, 2011, H&B and JJ Cars entered into a five-year Lease Agreement commencing on July 1, 2011, and scheduled to terminate on June 30, 2016. Mokarzel guaranteed the payment of rent and other charges under the Lease Agreement. As will be discussed in further detail below, JJ Cars and Mokarzel ultimately experienced financial difficulties. They paid rent as required for over four years, but made no rent payments after October 2015. H&B conveyed title to the property to a third person purchaser on or about April 6, 2016, at which point the Lease Agreement terminated.

Following execution of the Lease Agreement, JJ Cars took possession of the premises, and from July 2011 until February 2013, Mokarzel operated a car dealership at the location. During this period of time, Boyington would occasionally stop by Mokarzel's 's dealership to check on the property, and to socialize. During his visits, Boyington would make racist remarks about people of color to the employees of JJ Cars, who were Caucasian. He referred to people of color

2

as "those people." He occasionally used the N-word. Even though he lacked any authority, Boyington would say to employees of JJ Cars that "if any of those people come in, they aren't allowed to use the facilities." He would also say "I don't like those people on my lot," even though the lot was not Boyington's to control. If Boyington observed a person of color use the bathroom, Boyington would instruct one of JJ Cars' employees to clean up the bathroom afterwards. On at least one occasion, Boyington told an employee to not let people of color into the office, but to go outside to deal with them. The employees of JJ Cars generally disregarded Boyington, but were offended by his comments. The comments also made Mokarzel uncomfortable. Mokarzel told Boyington to stop making the comments; that those were Boyington's opinions, not Mokarzel's.

By February 2013, Mokarzel was in financial duress, and decided to close his business and sublease the premises. JJ Cars sublet the premises to Omar Martinez ("Martinez"). Martinez operated a business called Unique Auto Sales. Mokarzel did not provide H&B with the prerequisites necessary to obtain H&B's consent to sublet the premises, but Boyington nevertheless consented. Martinez stayed in the location for six to seven months, but ultimately moved his business to a new location on Warren Avenue in Portland.

Mokarzel next subleased the premises to an individual referred to as "Captain Bill." Captain Bill operated an outboard motor repair business on the premises for about one month, but then relocated. Mokarzel did not provide Boyington with the prerequisites necessary to obtain approval to sublet premises to Captain Bill, but Boyington never objected to the sublet.

After Captain Bill left, JJ Cars subleased the premises to AHF, LLC ("AHF"). AHF was owned by Abderrahim Lembarra ("Lembarra," but sometimes referred to in the testimony as "Abraham") and two other individuals. AHF used the premises to operate a car dealership and a transportation service. As with the other subtenants, Mokarzel did not provide to Boyington any

3

of the prerequisite information and documents required by the Lease Agreement in order to obtain the landlord's consent to sublet the premises, but Boyington consented anyway.

Lembarra only met with Boyington on one occasion, about six weeks after AHF had occupied the premises. Boyington appeared at the premises. Lembarra offered Boyington a cup of tea. Boyington complained that in the past, Somalis from the business next door would come onto the premises and do damage to his property. Boyington told Lembarra that "I wish I had a wall to block niggers coming over to my property, they have done a lot of damage to my property." Boyington asked Lembarra where he was from. Lembarra was offended by the tone and content of Boyington's comments.

AHF's car dealership never turned a profit, and by approximately October 2015 AHF decided to close its car business and relocate its transportation service to a better location. Once again, Mokarzel began looking for a new subtenant.

By November 2015, Mokarzel had identified Wholesale Motors, Inc., a nearby company owned and operated by David McGovern ("McGovern"), as a potential subtenant. McGovern is Caucasian. McGovern began to occupy the premises. McGovern not only wanted to sublet the premises, but to extend the Lease Agreement and possibly buy the property. In November 2015, Mokarzel and McGovern asked to meet with Boyington, but Boyington refused. Mokarzel persisted in attempting to arrange for Boyington to meet with McGovern, but Boyington said he didn't like McGovern and wouldn't meet with him. Boyington refused to approve a sublease for McGovern, and McGovern soon vacated the premises.

After that, the premises sat unoccupied. Mokarzel stopped paying rent and any other expenses, and Boyington took no steps to find a new tenant. Boyington simply decided he no longer wanted H&B to lease the premises. On February 1, 2016, Boyington sent JJ Cars and

4

Mokarzel a notice of default. On March 10, 2016, Boyington served JJ Cars and Mokarzel with a Complaint for FED. On March 24, 2016, with the cooperation of Mokarzel, Boyington obtained an FED judgment for the premises. Thereafter, Boyington contacted a broker at CBRE to sell the property. The property went under contract promptly, and closed on or about April 7, 2016.

## CONCLUSIONS OF LAW

Based on its one count Complaint, H&B seeks damages for unpaid rent and other charges under the Lease Agreement for the period November 2015 through April 6, 2016, which was the day before the premises were sold. JJ Cars and Mokarzel seek to avoid paying damages on a variety of grounds, two of which are persuasive.[1] Article XIII of the Lease Agreement provides that Lessor's consent to Lessee's proposed sublease "shall not be unreasonably withheld or delayed." In this case, Boyington refused to provide H&B's consent for JJ Cars to sublease to McGovern, simply because Boyington did not like McGovern. Boyington did not withhold his consent based on a "reasonable review" of McGovern's creditworthiness, business experience, or capacity to perform JJ Cars' obligations under the lease. Boyington refused to conduct any review at all, and refused to even talk with McGovern. McGovern wanted not only to sublease the premises, but to extend the Lease Agreement and possibly even buy the building. Had Boyington provided the reasonable consent required under the Lease Agreement, JJ Cars and Mokarzel would not have been in the position of being unable to pay rent and other charges from November 2015 through April 6, 2016. H&B's breach of the Lease Agreement therefore excused JJ Cars and Mokarzel's lack of performance. *See Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1.

---

[1] For the reasons discussed in connect with the Third Party Complaint against Boyington, the Court does not find the claim of discrimination is a defense to H&B's breach of contract claim.

Not only did Boyington fail to provide reasonable consent to sublease the premises, when JJ Cars and Mokarzel began missing rent payments, Boyington took no steps whatsoever to lease the premises to anyone else. It was not until near the very end of the lease term that Boyington eventually decided to sell the building, after which it took only approximately two weeks to bring a sale to closing. By failing to take any steps sooner, Boyington failed to mitigate damages.

H&B and Boyington argue that in the commercial lease context, a landlord has no duty to mitigate damages unless the duty is contained in the commercial lease agreement. *Dahl v. Comber*, 444 A.2d 392, 393 n. 2 (Me. 1982). In this case, however, the Lease Agreement does obligate H&B to mitigate damages. According to Article XX(a)(iv)(B) of the Lease Agreement, which applies when the Lessor claims right to possession of the premises but has not yet terminated the lease, "Lessor shall use commercially reasonable efforts to relet the leased premises or any part thereof for such rent and upon such terms as Lessor, in its reasonable discretion, shall determine." H&B and Boyington were therefore required to mitigate damages, and failed to do so. For all of these reasons, judgment is granted to JJ Cars and Mokarzel on the Complaint.

In their two count Counterclaim, JJ Cars and Mokarzel seek damages against H&B for breach of the Lease Agreement's obligation to not unreasonably withhold consent to subleasing, and for fraud. Both counts fail. Although as discussed above H&B unreasonably withheld consent for JJ Cars to sublease the premises to McGovern, neither JJ Cars nor Mokarzel has suffered any damages therefrom. As to fraud, JJ Cars and Mokarzel failed to adduce any evidence that H&B or Boyington engaged in fraud of any kind during the making of the Lease Agreement or thereafter. Accordingly, judgment is granted to H&B on the Counterclaim.

In their Third Party Complaint against Boyington, JJ Cars and Mokarzel seek damages for public accommodation discrimination pursuant to the Maine Human Rights Act, 5 M.R.A. § 4592.

Their theory is that Boyington harbors racial animus against persons of color; harassed and discriminated against JJ Cars' subtenants; and caused those subtenants to vacate the premises. The problem is that the evidence does not support the theory, at least as to causation.

Based on his bigoted, repulsive, and discriminatory statements to Caucasian employees of JJ Cars, about persons of color who arrived on the premises to purchase a car, Boyington appears to harbor racial animus against people of color. However, all the comments credibly established by the evidence occurred while JJ Cars was still in business and occupying the premises—before the subletting occurred. There was no credible evidence that Boyington made similar comments directed at the subtenants of JJ Cars, or that Boyington caused the subtenants to vacate the premises. Moreover, not all the subtenants of JJ Cars were people of color. To the contrary, on behalf of H&B, Boyington consented to subletting to subtenants who were persons of color. The only subtenant Boyington objected to was McGovern, and McGovern is Caucasian.

During his one meeting with Lembarra, Boyington made reprehensible statements about Somalis involved with a nearby business. However, the comments were not directed at Lembarra; Boyington only had that one conversation with Lembarra; and Boyington consented to AHF's sublease. AHF's car business eventually failed of its own accord, which caused AHF to close its business and relocate its transportation service. On the evidence, JJ Cars and Mokarzel have not sustained their burden of proving discrimination against their subtenants. Therefore, judgment is granted to Boyington on the Third Party Complaint.

## CONCLUSION

For all the reasons stated above, judgment is granted to JJ Cars and Mokarzel on the Complaint. Judgment is granted to H&B on the Counterclaim. Judgment is granted to Boyington

7

on the Third Party Complaint.  The Court declines to award attorney fees to any party, and each party is responsible for its own costs.

So Ordered.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

Dated: __January 3, 2020__                          __s/_____

                                                    Michael A. Duddy
                                                    Judge, Business and Consumer Docket